FULL NAME _Francis Woukop YOMI_

COMMITTED NAME (if different) _____

FULL ADDRESS INCLUDING NAME OF INSTITUTION _____

PRISON NUMBER (if applicable) _____

```
                  FILED
         CLERK, U.S. DISTRICT COURT

            MAR 7 2023

     CENTRAL DISTRICT OF CALIFORNIA
     BY: _____EEE_____ DEPUTY
```

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

_Francis W. YOMI_

PLAINTIFF,

v.

_Department of Health and Human Services, et al,_

DEFENDANT(S).

CASE NUMBER  **LACV23-01740-MEMF-Ex**

_To be supplied by the Clerk_

**CIVIL RIGHTS COMPLAINT PURSUANT TO** _(Check one)_

☒ 42 U.S.C. § 1983
☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971)

A. **PREVIOUS LAWSUITS**

1. Have you brought any other lawsuits in a federal court while a prisoner: ☐ Yes  ☒ No

2. If your answer to "1." is yes, how many? _____

   Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

a. Parties to this previous lawsuit:
   Plaintiff _____

   _____

   Defendants _____

   _____

b. Court _____

   _____

c. Docket or case number _____

d. Name of judge to whom case was assigned _____

e. Disposition (For example: Was the case dismissed? If so, what was the basis for dismissal? Was it
   appealed? Is it still pending?) _____

f. Issues raised: _____

   _____

   _____

g. Approximate date of filing lawsuit: _____

h. Approximate date of disposition _____

## B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. Is there a grievance procedure available at the institution where the events relating to your current complaint
   occurred? ☐ Yes ☒ No

2. Have you filed a grievance concerning the facts relating to your current complaint? ☐ Yes ☒ No

   If your answer is no, explain why not _____
   My case is about non-selection for a job, and my only option was to file a EEO complaint with the EEOC, which I did.

   _____

3. Is the grievance procedure completed? ☒ Yes ☐ No

   If your answer is no, explain why not _____

   _____

4. Please attach copies of papers related to the grievance procedure.

## C. JURISDICTION

This complaint alleges that the civil rights of plaintiff _Francis Woukop Yomi_____
                                                          (print plaintiff's name)

who presently resides at _P. O. Box 3292 Frederick, MD 21705_____,
                          (mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at
_Department of Health and Human Services (DHHS), one of its Agencies named FDA in Woodland Hills, California (CA) or Irvine, CA_
                          (institution/city where violation occurred)

on (date or dates) _____ 3/5/23 _____, _____, _____ 3/5/23 _____.
(Claim I)                        (Claim II)                    (Claim III)

**NOTE:**    You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1.    Defendant    Department of Health and Human Services (DHHS), et al. _____ resides or works at
                   (full name of first defendant)

                   200 Independence Avenue, SW., Washongton, D.C. 20201
                   (full address of first defendant)

                   Secretary
                   (defendant's position and title, if any)

    The defendant is sued in his/her (Check one or both): ☐ individual   ☒ official capacity.

    Explain how this defendant was acting under color of law:
    It did not select me for the Consumer Safety Officer (CSO) job in Woodland Hills, CA, based on discrimination and it
    retaliated against me later on 6/17/2020 when it did not select me in Ohio, for filing a EEO Complaint against it on 4/9/2020

2.    Defendant    Department of Justice _____ resides or works at
                   (full name of first defendant)

                   10th & Pennsylvania Ave., N.W. Washington, D.C. 20530
                   (full address of first defendant)

                   Office of the Attorney General
                   (defendant's position and title, if any)

    The defendant is sued in his/her (Check one or both): ☐ individual   ☒ official capacity.

    Explain how this defendant was acting under color of law:
    It did not select me for the Consumer Safety Officer (CSO) job in Woodland Hills, CA, based on discrimination and it
    retaliated against me later on 6/17/2020 when it did not select me in Ohio, for filing a EEO Complaint against it on 4/9/2020

3.    Defendant    United States Attorney _____ resides or works at
                   (full name of first defendant)

                   360 Robert J. Dole U.S. Courthouse 500 State Avenue Kansas City, KS 66101
                   (full address of first defendant)

                   United States Attorney
                   (defendant's position and title, if any)

    The defendant is sued in his/her (Check one or both): ☐ individual   ☒ official capacity.

    Explain how this defendant was acting under color of law:
    It did not select me for the Consumer Safety Officer (CSO) job in Woodland Hills, CA, based on discrimination and it
    retaliated against me later on 6/17/2020 when it did not select me in Ohio, for filing a EEO Complaint against it on 4/9/2020

4.  Defendant _____ resides or works at
           (full name of first defendant)

           _____
           (full address of first defendant)

           _____
           (defendant's position and title, if any)

    The defendant is sued in his/her (Check one or both): ☐ individual    ☐ official capacity.

    Explain how this defendant was acting under color of law:

    _____

    _____

5.  Defendant _____ resides or works at
           (full name of first defendant)

           _____
           (full address of first defendant)

           _____
           (defendant's position and title, if any)

    The defendant is sued in his/her (Check one or both): ☐ individual    ☐ official capacity.

    Explain how this defendant was acting under color of law:

    _____

    _____

**D. CLAIMS\***

CLAIM I

The following civil right has been violated:

See attachment 1 titled: Claims and Explanation of Claims.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Supporting Facts:  Include all facts you consider important.  State the facts clearly, in your own words, and without citing legal authority or argument.  Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

See Attachment 1 titled: Claims and Explanation of Claims.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.*

CIVIL RIGHTS COMPLAINT

CV-66 (7/97)

## E. REQUEST FOR RELIEF

I believe that I am entitled to the following specific relief:

1) Back pay (with interests) from February 28, 2020 to the time of the final verdict of this lawsuit (which will be calculated later) *as the case is still ongoing*

2) Front pay (with interests) from March 2023 to March 2060, as I could have worked as CSO for 40 years (calculation later) *as the case is still ongoing*

3) Compensatory damages (pecuniary and non-pecuniary damages, etc.) which will be calculated later in this ongoing lawsuit.

4) Punitive Damages of 100 millions of dollars because of the intentional and/or reckless discrimination

5) Defendant must send an email to the entire DHHS employees, officials, memebrs of the management, listing my "Claims and Explanation of Claims", by blacking out the name of individuals mentioned it in (for privacy purposes) indicating which Claim/s i prevailed on, but without mentioning any amount of money I got from this lawsuit.

6) Defendant must be directed to promote me immediately at GS-13 if the case is resolved in 2023, or at GS-14 if this case is resolved after February 2024, and to on, which means at GS-15 if this case is resolved after February 2025, as I would have been at GS-13 in March 2023 if there was no discrimination, by being selected competitively at GS-13 after one year of full service at GS-12, which would have been at the end of February 2023.

7) Defendant must be directed to pay all attorneys' fees.

____3/5/23____
*(Date)*

____[signature]____
*(Signature of Plaintiff)*

# ATTACHMENT 1

## CLAIMS AND EXPLANATION OF CLAIMS

### I. CLAIMS

### Claim 1

I allege that I was subjected to Discrimination on the bases of Race (African-American), and/or Color (Black), and/or National Origin (Cameroon, in Africa) when: On 4/9/2020, after my job interview of 2/12/2020 with the FDA in Irvine or Woodland Hills, California, I became aware that I was not selected for the Consumer Safety Officer (CSO) position in Irvine or Woodland Hills, CA, posted under job Vacancy Announcement Number 10695966, at GS-9. And/or:

**Claim 2**. I allege that I was retaliated against when during my job interview of February 12, 2020, for the CSO job in Irvine or Woodland Hills, CA, I conveyed to the interview panel members that I was a former FDA employee in Kansas, and I was discriminated (harassed) against by the management in Kansas (my former Supervisor). I believe that some Officials working for Defendant (FDA in Woodland Hills or Irvine, CA) both the interview panel members, the selecting official, maybe the Program Analyst, and maybe the Human Resources in Irvine or Woodland Hills, CA, who were involved in the selection process retaliated against me for communicating discrimination (harassment) during my job interview, and contributed to my non-selection. And/or:

**Claim 3.** I allege that I was subjected to Discrimination on the bases of Race (African-American), and/or Color (Black), and/or National Origin (Cameroon, in Africa) by Defendant (one of its Agency named the FDA, located in Cincinnati, OH, (especially by some members of the Agency's Office of Talent Solutions), when on or before June 17, 2020, I was not selected for the CSO Job Announcement Vacancy ID 10695966, at GS-9, in Cincinnati, OH, after my "referral to the selecting official" on 03/27/2020. And/or:

**Claim 4.** I allege that I was retaliated against by Defendant on June 17, 2020, when I was not selected, nor interviewed for the CSO Job Announcement Vacancy ID 10695966, at GS-9, in Cincinnati, OH, after one of Defendant's Agencies (the FDA in Cincinnati, Ohio) became aware of my EEO complaint against the FDA in California filed on April 9, 2020.

II. Explanation of Claims

**Claim No. 1:**
I have a Master's degree and was qualified for the CSO/Investigator job at the DHHS/FDA in California (CA) in February 2020. I used to work for the FDA before in 2015 as a CSO in another State. After my interview of February 12, 2020 for the CSO job in CA, I was not selected, and two applicants were selected on 2/28/2020. I filed a complaint of discrimination on April 9, 2020, and the Agency was aware of it the same day, on 4/9/2020. The EEOC Counselor interviewed the selecting official on 05/20/2020, and the EEOC Investigator interviewed the Agency's officials on 10/28/2020. I requested through the FOIA the interview sheet score of applicants, and realized that the Agency signed the job interview questions/responses of applicants on 10/28/2020, which was almost one year after the Agency selected the 2 applicants, and which is almost one year after I filed my EEO Complaint. The EEOC Report of Investigation (ROI) has it all, very well documented, with the e. signature of the interview sheet showing the date of 10/28/2020, which is a **big Fraud** by the Agency, when it intentionally gave me a bad score on my interview sheet, and a good score to the two selectees, but simply because it graded those interview sheets several months after the selection (which is fraud), and after the EEO Counselor and Investigator interviewed them (which is fraud committed by Defendant). It graded my interview sheet on May 21, 2020, after the EEO Counselor interviewed the selecting official on May 12, 2020 and on May 20, 2020, whereas the selection was already made on February 28, 2020, which proves the big fraud. Also, the ROI shows that the reference check of at least one selectee has no name of the person who made the reference, and no date on it. This is still part of Fraud. The EEOC Judge did not address the Fraud, as she is from the Philippines, as the two job interviewers are too, and as the two selectees are too (as seen in the ROI).

**Claim No. 2:** The Claim No. 2 relating to retaliation is about me telling to the job interviewers while responding to their questions that I was harassed by my former supervisor in my previous job with this same Defendant, whereas the Law prohibits retaliating against a job applicant for communicating discrimination (including harassment) to an employer (see Attachment 3). The end of page 172 of the ROI shows that the job interviewed noted in the interview sheet that I said that I was harassed by my former supervisor in the FDA in 2015 in another State. However, the EEOC Judge did not address it at all.

**Claim No. 3:**
Also, I was not selected for the same job in Ohio in 6/17/2020, because during the mediation of my EEO Complaint against the FDA in California on June 9, 2020, the HR Supervisor of the Ohio job was there, then on 6/17/2020, I received an email saying I was not selected for the CSO in Ohio. Both (CA and OH) are for the same EEO case. This non-selection in Ohio was retaliation against me for filing a EEO complaint against FDA in CA. The ROI shows that the HR did not send my application package to the selecting official in Ohio, as I was referred to him for selection. This confirms the wrongful non-selection. Before the EEOC Administrative Judge (AJ) goes deep into the case, she inquired about why I was not interviewed for the CSO job in Ohio. Defendant or Respondent or Agency Representative responded and said that it was because the Agency interviews who it wants. I replied by saying that this is not true, as it is the Agency policy to interview the best qualified applicants. I added in my Reply by saying: even the selecting official said during his testimony (documented in the ROI) that the Agency interviews the best qualified applicants, and he added that my application did not reach him for an interview, and he does not know why, and he just knew about me for the first time only

during the EEOC Investigation. In fact, after my referral to him (the selecting official), the HR Supervisor in Ohio was already aware of my EEO complaint against the Agency in California, and that can explain why my application package was not finally sent to the selecting official for a potential interview in Ohio. However, after the AJ realized that Defendant has a lot of people involved in this EEO complaint who are from the Philippines like her, she ignored my arguments (including the Fraud committed by the Agency when it signed the interview sheet of applicants almost a year after their selection, and after I filed the EEO complaint, and including not saying anything at all anymore about the fact that I proved that it was the Agency Policy to interview the best applicants, but not who it wants to interview). Thus, I was wrongfully not interviewed, which means that I was wrongfully not selected on June 17, 2020, as the HR supervisor who attended the mediation around June 8, 2020 is a person of the non-protected group, and knew that I am from the protected group. This suffices to prove discrimination. However, the Agency had even hired at least one person of the non-protected group. Please note that at least one member of the HR or of the selecting process in CA was also involved in the selection process in OH, which can explain why my name was removed after my referral, and did not reach to the selecting official, as that member of CA communicated to OH about my EEO Complaint of April 9, 2020. The EEOC Appeal Judge said that the FDA did not select me because it had already selected the candidates the day of my referral to the selecting official on 3/27/2020. However, I said in the motion for reconsideration that this is not true, since I already said in my EEOC summary judgment and in EEOC Appeal that the selecting official himself had said that the Certificate of Eligibilities was given to him on 4/22/2020, and he signed it that day (ROI page 134), thus, it is so clear that the selection was not made before the eligibility of applicants. He added that my name was not there, and said that he has no idea about when the Agency had made an amended list of eligibility with my name on it. Thus, this was the turning point of my non-selection at the EEOC Appeal. This means that in order for the EEOC Appeal or OFO Judge to deny my motion for reconsideration, s/he should have proven who had said that the FDA selected the candidates before or on 3/27/2020, and should have also addressed my argument on the fact that even the selecting official said that he received and signed the certificate of eligibility on 4/22/2020 (see ROI on page 134, and ROI page 268 and 272 with the selecting official signature and date of 4/22/2020), but not before 3/27/2020. Also, no document in the ROI shows that the selection was made on 3/27/2020, but several documents, with the electronic signature of the selecting official show that he signed the Certificate of Eligibility on 4/22/2020 (Doc. 268, 272), as he even testified by himself (ROI page 134)., More importantly, ROI pages 269 and 270 (with 15 names of applicants in total) show that my name was there (ROI page 270) before the selection of 4/22/2020, but pages 271 and 272 (with 14 names in total and with the signature of the selecting official and date of 4/22/2020 on page 272) show the very same names of all referred applicants seen on page 269 and 270 (14 names), but without anymore my name on it, and only me. But why? Simply because it has been secretly removed by the OTS (Office of Talent Solutions) whose the member of the selection process in CA and the HR Supervisor at the OTS involved in selections, and who was there during the EEO mediation of June 2020)  are part of (see email in ROI page 266), as they were aware of the fact that I communicated discrimination 9harassment) during my job interview while answering to questions, and/or as they were aware of my my EEO Complaint of April 9, 2020 against FDA in California. That is why on April 22, 2020, my name was no there anymore in the Certificate of Eligibility that reached to the selecting official (ROI, page 134, page 268, and page 272). It is so clear! Thus, not only I deserve to win this claim too, but EEOC AJ  and EEOC Appeal Judges intentionally made me lose the case.

Moreover and more importantly, the EEOC Appeal also called OFO confirmed its intentional wrongdoing here when it proved that it retaliated against me for filing complaint of judicial misconduct against all EEOC Judges in September 2022, whereas that Complaint was not directly sent to them, but was sent to

the EEOC Chair and other Officials, and whereas the last submission or my Reply to Defendant's Response to my motion for reconsideration were done in June 2022. The EEOC Appeal's decision clearly states on page 3 of it that I filed a complaint of misconduct against EEOC Judges who ruled on all my multiple cases of discrimination (see Attachment 2, on page 3). This clearly proves the retaliation against me by the EEOC Appeal Judge/s, and here I proved that their decision itself was wrong, as it was not on 3/27/2020 that the selection in Ohio was made, and the EEOC Appeal has never proven that in its decision on my motion for reconsideration, whereas I clearly insisted on it, proving that the Certificate of Eligibility was done on 4/22/2020, after the date of 3/27/2020, which clearly proves that OFO was wrong, and intentionally wrong.

**Claim No. 4:** My non-selection in Ohio in June 17, 2020 was also based on retaliation against me for filing a EEO complaint against the Agency in California in April 9, 2020, as the HR Supervisor handling job application or actively involved in job selection was there during my mediation for the complaint against the Agency in California on June 8 or 9, 2020. The retaliation claim is proper here, and I deserved to win, if the EEOC Judges were not intentionally wrong. The record (the ROI) shows that the 2 selectees in California are from the Philippines origin, and the job interviewers are also from the Philippines origin. The ROI has all of these. I searched through google about the EEOC Administrative Judge (AJ), and found out that she is also from the Philippines. It is so clear that the discrimination was at least based on national origin, and that the misconduct of the AJ for wrongfully and intentionally making me lose the case was mainly based on national origin too. However, the EEOC Appeal Judges made me lose the case after my motion for reconsideration on Appeal on 12/13/2022, but wrongful and intentionally, without talking about all of these Fraud committed by the Agency, but especially,

**Here below are the pages of the ROI that clearly prove the fraud**

**Page 178** (which shows a zoom made on the electronic signature of one of my 2 job interviewers (seen on page 177), and which page 178 has the date of 2020-05-21, which is May 21, 2020, whereas the selection was made on 2/28/2020, and I filed my EEO Complaint on April 9, 2020 (see Roi at the bottom of page 1), and the EEO Counselor interviewed the selecting official on May 12, 2020 and on or around May 18, 2020 (see ROI at the beginning of page 39) , all of which were done before **the job interviewer graded my job interview on May 21, 2020 (see ROI on page 177, e.signature being zoomed on page 178, with the date of May 21, 2020,, which was a few days after the interview of the EEO Counselor, and which was more than 2 months after the selection of candidates, which does not make any sense, except BIG FRAUD.** This is clearly a proof of pure FRAUD, and proof of intentional bad grading of my job interview, and the one of the 2 selectees graded on 10/28/2020. So:
- **Page 222** of the ROI that show that there is no signature and no date on the Reference Check of one of the selectee candidates in California: proof of invalid document, and improper selection of the candidate.
- **Page 199** of the ROI shows that there is no signature, and no date on the Interview worksheet of second selectee candidate, although there is a grade score given to her interview, which is a pure proof of fraud, since the Agency rushed to grade her intention on 10/28/2020, as it did for the man who has been selected for the first selectee, almost one year after their selection, then in its rush, the Agency has forgotten to sign and date it. It is so clear!
- **Page 192 and page 206** show that Mr. Araneta graded the interview worksheet of the two selectees on 10/28/2020, the same day the EEO Investigator interviewed him, which is almost a

year after the selection of the 2 selectees (selection made on 2/28/2020, ROI at the end of pages 164, and 215), which does not make any sense, but proves the **BIG FRAUD** committed by him, and thus, by Defendant or Respondent (the DHHS or FDA). Please zoom his electronic signature, and see the date of 2020-10-28 at the bottom of that electronic signature.

About the CSO job in Ohio, Ms. Amaya from the FDA in California was involved in the selection process in California. So, she knew I was not selected. The ROI has it. I filed the EEO Complaint against the FDA in CA on April 9, 2020, and she was aware of it. On 3/27/2020, a human Resource Supervisor for the CSO job in Ohio sent an email to the members involved in the selection process in Ohio, including Ms. Amaya and Ms. Bennett, informing them that he added some applicant's names for selection in Ohio (see email on page 266 of the ROI). However, the selecting official for the CSO job in Cincinnati, Ohio said he never saw my name in the Certificate of Eligibility that was provided to him, before he selected candidates on 4/22/2020, or the Certificate that his hiring team was using. He added that he has no idea when an amended Certificate appeared. **See ROI page 134**, on his response to question 16. And he also said at the beginning of page 135 of the ROI that: "Consequently, the Complainant's application was not reviewed for a potential interview". And on June 9, 2020, I have a mediation meeting with the FDA regarding my EEO Complaint of April 9, 2020, and Ms. Bennett was there in that meeting, then just a few days later on 6/15/2020, I received an email regarding the CSO job in Ohio, stating that I was not selected in Ohio (ROI page 249). Thus, this is a pure evidence of wrongful non-selection in Ohio, and is a clear evidence of retaliation for me filing a EEO Complaint against he FDA in California. To connect the dots in this matter, an email shows that Ms. Amaya of CA, and Ms. Bennett Gina are all from the OTS, and were all aware of my eligibility for the CSO position in Cincinnati on 3/27/2020 (see ROI at the very beginning of page 266). The ROI shows that Ms. Amaya was aware of my non-selection of 2/28/2020 in California, and she was also aware of my EEO Complaint of 4/9/2020 against the FDA in CA. So, it is now clear that she is the one who informed Ms. Bennett about my EEO complaint of April 9, 2020 against the FDA in CA. This can explain why my name on the amended certificate of eligibility of 3/27/2020 had never reached to the selecting official, as he stated by himself (see ROI on page 134). That is why I was never interviewed, and thus, not selected, because my name did not even reach to the selecting official desk, despite my referral seen in ROI on page 266. ROI page 269 and 270 show that my name was there (ROI page 270) before the selection of 4/22/2020, but page 271 and 272 (with the signature of the selecting official on page 272) show the very same names of all referred applicants seen on page 269 and 270, but without my name on it, and only me. Why? Simply because it has been secretly removed by the OTS (Office of Talent Solutions) whose MS. Amaya and Ms. Bennett are part of (email in ROI page 266), as they were aware of my EEO Complaint against FDA in California. It is so clear!

Also, the following pages show the irregularities or discrepancies on the application sheets (reference check) of the selectees: **pages 293 and 297 of the ROI show that there is no name and no signature of the Reference Check of the 2 selected candidates,** which proves an improper or wrongful selection of candidates in Ohio.



**Protected Activity**

e federal laws prohibiting discrimination (such as Title VII, Section 1981 of the Civil Rights Act the Americans with Disabilities Act, and the Age Discrimination in Employment Act) also retaliation against employees who engage in "protected activity" under these laws.

are two types of protected activity:

Opposition. Employees who oppose any act made illegal by these laws (that is, discrimination, harassment, or retaliation) are engaged in protected activity. The Supreme Court has held that this protects not only employees who complain directly of harassment or discrimination, but also those who participate in an internal investigation of such a complaint as witnesses. Generally, any time an employee communicates to the employer a belief that the employer has engaged in discrimination or harassment, that employee is protected from retaliation. This includes situations in which an employee refuses to go along with a discriminatory request (for example, an executive's mandate that the company not hire anyone over the age of 50).

Participation. Employees who file a charge of discrimination with the EEOC or a similar state

Type here to search

Attachment 2





The law prohibits punishing (retaliating—also referred to as "reprisal") job applicants or employees for asserting their rights to be free from employment discrimination, including harassment. Asserting these Equal Employment Opportunity (EEO) rights is called "protected activity," and it can take many forms. For example, it is unlawful to retaliate against applicants or employees for:

- Filing or being a witness in an EEO complaint, investigation, or lawsuit;
- Communicating with a supervisor or manager about employment discrimination, including harassment;
- Answering questions during an employer investigation of alleged harassment;
- Refusing to follow orders that would result in discrimination resisting sexual advances;
- Intervening to protect others' protected activities; or
- Requesting accommodation of a disability or for a religious practice;

A manager is not allowed to do anything in response to EEO activity that would discourage a reasonable person from resisting or complaining about future discrimination. Employees who believe they are victims of retaliation may file a complaint with their respective EEO office.

Attachment 3

Page 2 of 2

## DEPARTMENT OF HEALTH AND HUMAN SERVICES
## FOOD AND DRUG ADMINISTRATION

---

## REPORT OF INVESTIGATION

---

**TITLE:**
Francis Woukop Yomi
Applicant/Former FDA Consumer Safety
Officer, GS- 696-09
U.S. Department of Health and Human
Services, Food and Drug Administration
10903 New Hampshire Ave.
Silver Spring, MD  20903

**COMPLAINANT'S HOME
ADDRESS:**
PO Box 19656
Frederick, MD  21705

**COMPLAINANT'S
TELEPHONE NUMBERS**:
301-473-2019 (cell)

**COMPLAINANT'S
REPRESENTATIVE**:
None

**CASE:**
HHS-FDAORAPA-070-2020

**CONTRACTOR**:
Crossroads Mediation Services
9250 Mosby Street, Suite 100
Manassas, VA  20110

**INVESTIGATOR**:
Salli Phillips

**BASES  OF COMPLAINT**:  Race, Color,
National Origin, and Reprisal

---

## I.    DESCRIPTION OF THE COMPLAINT

Nature of action, decision or condition          Non-selection
giving rise to complaint:

Date of alleged discrimination:          April 9, 2020

## II.    CLAIMS  IN THE COMPLAINT

The Department of Health and Human Services (HHS), Food and Drug Administration (FDA)
accepted for investigation the following claims of Francis Yomi, Complainant:

In the Formal Complaint, you allege that you were subjected to Harassment and
Discrimination on the bases of Race (African-American), Color (Black), National Origin
(Cameroon, Africa), and Reprisal/Retaliation (Prior EEO Activity) when:

Francis Yomi                                                      HHS-FDAORAPA-070-20

1. On April 9, 2020, after your job interview on February 12, 2020, for positions with the FDA located in Irvine or Woodland Hills, California, you became aware that you were not selected for the Consumer Safety Officer (CSO) position at GS-9, in Irvine or Woodland Hills, CA posted under job Vacancy Announcement Number 10695966.

2. On February 12, 2020, during your job interview for the CSO position, you allege reprisal/retaliation when you conveyed to the interview panel members that you were a former FDA employee in Lenexa, KS, and you were discriminated against and harassed by management (Your former Supervisor) in Lenexa, KA.  You believe that the interview panel members, selecting official, Program Analyst, and the Human Resources Department in Irvine, CA or Woodland Hills, CA that assisted in the hiring or selection process were complicit in what you deemed a retaliatory process when you were not selected for the CSO position.

3. On June 17, 2020, you allege that you were retaliated against when you were not selected for the CSO position, Vacancy Announcement Number 10695966, at GS-9, in Cincinnati, OH after you were referred to the selecting official on March 27, 2020; due to the agency's knowledge of your prior EEO activity that was taken against the FDA Management and Human Resources located in Irvine, CA or Woodland Hills, CA.

4. On October 18, 2020, you learned that the FDA in California stated that you did not apply for the CSO position, Vacancy Announcement Number 10695966, in Irvine, CA.

*[Investigator's Note:  Complainant amended his Acceptance Letter on November 23, 2020, to include claims three (3) and four (4). ( Exhibit C-4)]*

## III.    DESCRIPTION OF THE INVESTIGATION

Place of Investigation:                    Investigation conducted by telephone

Dates of Investigation:                    October 2, 2020 – January 8, 2021

Date ROI Submitted:                       February 1, 2021

## IV.    INVESTIGATIVE SUMMARY

Complainant (African-American, African, black, Reprisal) reported the FDA employed him as a Consumer Safety Officer (CSO) GS-0696-09, from 2014 to 2015 in Lenexa, Kansas.  He noted his former supervisor was Dina West, Operations Manager, Office of Human and Animal Foods, West Division II, Kansas City District, Kansas.  He alleged he was subjected to discrimination by Ms. West and filed an EEO complaint in 2015, which resulted in a Final Agency Decision. (Exhibit G-7)

2

Francis Yomi                                                          HHS-FDAORAPA-070-20

According to Complainant, in February 2020,  he applied for a CSO position with the FDA in California.  He stated that due to the Agency's discrimination against him based on his race, national origin, color, and reprisal, he was not selected for the position.  (Exhibit F-1)

Complainant made initial contact with an EEO Counselor on April 17, 2020, and the initial interview was held on April 29, 2020.  (Exhibit B-1)  On July 10, 2020, Complainant was issued a Notice of Right to File a Discrimination Complaint.  (Exhibit B-2)  On July 30, 2020, Complainant filed a Formal Complaint of Discrimination against the Agency.  (Exhibit A-1) The Agency acknowledged receipt of the complaint on July 30, 2020.  (Exhibit C-1)  On August 30, 2020, the Agency accepted the complaint for investigation and issued a Letter of Acceptance. (Exhibit C-2)  On October 2, 2020, the Agency amended the Complainant's Letter of Acceptance.  (Exhibit C-3)  On November 23, 2020, the Agency amended the Complainant's Letter of Acceptance.  (Exhibit C-4)  On December 14, 2020, Complainant was issued a Letter denying his request for amendment.  (Exhibit C-5)  On June 8, 2020, the Agency participated in mediation with Complainant.  (Exhibit D-1)

The following are the *prima facie* elements for a disparate treatment claim: (Race, National Origin, Color)

1.  Is the Complainant a member of a protected class?
2.  Was the Complainant subjected to an adverse employment action?
3.  Is there a nexus between the Complainant's membership in the protected group and the adverse employment action (e.g., was someone not of the Complainant's protected group treated more favorably under similar circumstances), or is there other evidence that raises an inference of discriminatory bias?

The following are the *prima facie* elements for a reprisal claim:

1.  Did Complainant participate in protected EEO activity (i.e., filing a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under employment discrimination statutes; or opposing discrimination in Agency policies or practices)?
2.  Did the involved Agency official(s) know of Complainant's participation in protected EEO activity before the treatment at issue occurred?
3.  Did the Agency engage in the treatment of Complainant that was reasonably likely to deter protected EEO activity?
4.  Did the treatment at issue follow Complainant's participation in protected EEO activity closely in time or in circumstances such that a retaliatory motivation may be inferred?
5.  Is there any other evidence that would raise a retaliatory motive (e.g., a similarly situated employee who had not engaged in protected EEO activity was treated more favorably)?

The following are the *prima facie* elements of a hostile work environment claim (non-sexual):

3

Francis Yomi                                                          HHS-FDAORAPA-070-20

1.   Is the Complainant a member of a protected class?
2.   Was the Complainant subjected to an adverse employment action?
3.   Is there a nexus between the Complainant's membership in the protected group
     and the adverse employment action (e.g., was someone not of the Complainant's
     protected group treated more favorably under similar circumstances), or is there
     other evidence that raises an inference of discriminatory bias?

If Complainant establishes a *prima facie* case, then the burden shifts to the Agency to provide a
legitimate, non-discriminatory reasons for its actions.

The Investigator obtained an affidavit from the following management officials:

<u>Katherine Jacobitz</u> (White, Hispanic, white, prior EEO activity) stated the Agency employed her
as Director of the Investigative Branch, (DIB), 0-6 Captain (CAPT) U.S. Public Health Service
(USPS), series GS-0696-15 equivalent, Office of Regulatory Affairs, (ORA) Office of
Pharmaceutical Quality Operations, (OPQO), Division IV.  She noted she had served in her
current position for approximately two (2) years and had 20 years of service with the Federal
government.  (Exhibit F-3)  She identified her first-level supervisor as Steven Porter, Program
Director, 0-6, Commander (CDR) series GS-0696-15, Division of Pharmaceutical Quality
(DPQ), who reported to Alonza Cruse, Director, OPQ.

CAPT Jacobitz stated she was the selecting official for the CSO position under Vacancy
Announcement Number 10683417, in Los Angeles, CA, but because she was out of the office,
her Deputy signed the Certificate of Eligibles.  She related Complainant was an applicant for the
position in question; however, she did not know him and had only spoken to him once during
mediation on June 8, 2020.  She maintained she was not aware of Complainant's race, national
origin, color, or prior EEO activity.

CAPT Jacobitz described she was responsible for all FDA pharmaceutical operations in 13
western states.  She noted she was a mid-level manager with nine direct reports and
approximately 60 personnel within her Branch.  She stated that the majority of her employees
were Investigators.  (Exhibit F-3)

<u>Marcus Yambot</u> (Asian, Filipino, light brown, no prior EEO activity) reported the Agency
employed him as a Supervisory Consumer Safety Officer, (SCSO) 0-5 Lieutenant Commander
(LCDR), USPHS, GS-0696-13 equivalent, ORA, Medical Products and Tobacco Operations
(MPTO), OPQO, Division IV.  He noted he had served in his current position since January 2020
and had 12 years of service with the Federal government.  LCDR Yambot stated that, at the time
of the alleged discrimination, his first-level supervisor was CAPT Jacobitz, and his second-level
supervisor was CDR Porter.

LCDR Yambot related he was the selecting official for the CSO position under Vacancy
Announcement Number 10683417, in Los Angeles, CA for which Complainant applied.  He
reported he was not aware of Complainant's prior EEO activity with the Agency and only
became aware during this investigation.  He stated he had no previous working relationship with

4

000004

Francis Yomi                                              HHS-FDAORAPA-070-20

Complainant and did not know him from his previous employment.  He maintained he was not aware of Complainant's race, national origin, color, or prior EEO activity.  (Exhibit F-4)

Art Czabaniuk (White, Ukrainian, white, no prior EEO activity) stated the FDA employed him as District Director, GS-0696-15, ORA, OPQO, Division III, Detroit, MI.  He noted he had 19 years of service with the Federal government and six (6) years in his current position.  Mr. Czabaniuk identified his immediate supervisor as Alonza Cruse, who reported to Elizabeth Miller, Assistant Commissioner for Office of Medical Products and Tobacco Specialty Laboratory Operations.

Mr. Czabaniuk stated he was the selecting official for the CSO position in Cincinnati, OH, Vacancy Number 10695966, for which the Complainant applied.  He stated he was unaware of Complainant filing EEO complaints until his interview with the EEO Investigator.  He reported he had no working relationship with Complainant and was not aware of his prior employment with the FDA.

He related he was one of four Division Directors who was indirectly responsible for regulating pharmaceutical firms in 13 midwestern states.  He reported he currently supervised 69 employees, the majority being CSO's.  He stated he had six (6) SCSO's under his supervision that also supervised seven (7) CSO's each.  (Exhibit F-9)

The Investigator obtained an affidavit from the following witnesses:

Michael Araneta (Asian, Filipino, brown, no prior EEO activity) stated he was employed by the Agency as an SCSO, GS-0696-13, DPQO, Division IV, and had been in his position for 10 years, with 21 years of  Federal service.  Mr. Araneta reported his first-level supervisor was CAPT Jacobitz, who worked for CDR Porter.

He related he was one of the panel members that interviewed Complainant for the position of CSO under Vacancy Number 10683417, Los Angeles, CA.  Mr. Araneta related he did not know Complainant before their interview on February 12, 2020.  He stated he was not aware of Complainant's race, national origin, color, or prior EEO activity.  (Exhibit F-5)

Gerard DeLeon ( Asian, Filipino, brown, no prior EEO activity) stated that at the time of Complainant's filing, the Agency employed him as a SCSO, GS-0696-13, DPQO IV, and he worked in the area of Pharmaceutical Human and Animal Drugs.  He noted he had since resigned from the Agency as of September 2020 after 10 years of Federal service.  Mr. DeLeon identified his first-level supervisor as CAPT Jacobitz, and his second-level supervisor was CDR Porter.

Mr. DeLeon reported he served as a panel member and interviewed Complainant for a CSO position under Vacancy Announcement Number 10683417, Los Angeles, CA.  He remarked he did not know Complainant prior to his interview and was not aware of his race, national origin, color, or prior EEO activity.  (Exhibit F-6)

Maribel Amaya (Hispanic, Puerto Rican, brown, prior EEO activity) stated the Agency employed her as a Program Analyst, GS-0343-13 in the Office of Management, Division of Financial Operations.  Ms. Amaya reported she had been in her current position for five (5) years

5

Francis Yomi                                                HHS-FDAORAPA-070-20

and had 12 years of Federal service with the Agency.  She identified her first-level supervisor as
Myer Gribbins, Director of Field Operations, GS-15, and her second-level supervisor as Glenda
Barfell, Assistant Commissioner for the Office of Management.

Ms. Amaya stated she did not know Complainant and did not recall speaking to him over the
phone.  She stated that all their communication relative to the selection process had been through
email correspondence.  She reported she did not know about Complainant's prior EEO activity.
(Exhibit F-7)

Dina West (Caucasian, European, white, prior EEO activity) stated the FDA employed her as an
Operations Manager, Office of Human and Animal Foods, West Division II, Kansas City
District, Kansas.  She noted she had 32 years of service with the Agency.  Ms. West identified
her immediate supervisor as Cheryl Bigham, Program Division Director, GS-15, and stated her
second-level supervisor's position was currently vacant.

Ms. West stated she was Complainant's former supervisor in Kansas and the management
official he alleged discriminated against him.  (Exhibit F-8)

Steven Eastham (Caucasian, European, white, prior EEO activity) stated the FDA employed him
as a SCSO, GS-0696-14, ORA, OPQO III, in Cincinnati, OH.  He noted he had 32 years of
service with the Federal government, with 21 years in his current position.  Mr. Eastham
identified his immediate supervisor as Art Czabaniuk, who reported to Elizabeth Miller.

Mr. Eastham stated he was the team lead and interview panelist for the position of CSO in
Cincinnati, OH, under Vacancy Announcement Number 10695966.  He described he had no
former relationship with Complainant and was not aware of his prior EEO activity or protected
statuses.  He stated he has never met with Complainant or spoke with him on the phone or via
email.  He noted he was not aware Complainant had applied for the position of CSO in
Cincinnati, OH, until an EEO Investigator contacted him.  (Exhibit F-10)

Christopher Robichaud (Caucasian, Hispanic, white, prior EEO activity) stated the FDA
employed him as a Supervisory Human Resources Specialist, GS-0201-14, Office of Operations,
Office of Talent Solutions (OTS) in Dallas, Texas.  He noted he had five (5) years of service
with the Federal government, with approximately two (2) years in his current position.  Mr.
Robichaud identified his immediate supervisor as Gina Bennett, Supervisory Human Resources
Specialist, GS-0201-14, in OTS, who reported to Loraine Thompson, Deputy Director, GS-0201-
15, OTS.

Mr. Robichaud stated he had no working relationship with Complainant but was aware of him
through email correspondence when Complainant made inquiries regarding his CSO application
in OH.  He stressed he had no knowledge of Complainant's protected statuses and was not aware
of any prior EEO activity until the EEO Investigator contacted him.  (Exhibit-11)

Susan Aden (Caucasian, American, white, no prior EEO activity) stated the FDA employed her
as a Management and Program Analyst, GS-0343-13, ORA in Chicago, IL.  She noted she had
29 years of service with the Federal government and over two (2) years of service in her current

6

Francis Yomi                                                          HHS-FDAORAPA-070-20

position.  Ms. Aden identified her immediate supervisor as Kimberly Bailey, Administrative Officer, GS-0343-14, who reported to Daryle Harris, Supervisory Administrative Officer, GS-0343-15.

Ms. Aden reported she scheduled interviews for perspective candidates for the CSO position in OH.  She stated she did not know Complainant and had never met him or communicated with him by phone or email.  She confirmed she was not aware of his protected statuses and had no knowledge of his EEO complaint activity.

She stated her role in this selection process was to download candidate resumes from USAStaffing and upload them to SharePoint in the designated District folders.  She noted she worked with the hiring managers on scheduling interviews and provided guidance on submitting selection packets to OTS.

She described Direct-Hire Authority (DHA) as an appointment authority that the Office of Personnel Management (OPM) gives to Federal agencies to fill vacancies when there is a critical hiring need or severe shortage of candidates.  She stated that it was not mandated under DHA that all candidates be interviewed.  (Exhibit F-12)

*[Investigator's Note:  Ms. Aden did not provide an original signature or digital signature on her affidavit because she worked at home and did not have access to the proper equipment. Her statement is included in this report.  Exhibit F-12]*

If the Agency has produced legitimate, non-discriminatory reasons for its actions affecting Complainant, the burden then shifts back to Complainant to prove that the legitimate, non-discriminatory reasons articulated by the Agency are a pretext for prohibited discrimination. Complainant submitted a rebuttal Affidavit in response to management's testimony.  (Exhibit F-2)

> 1. *On April 9, 2020, after your job interview on February 12, 2020, for positions with the FDA located in Irvine or Woodland Hills, California, you became aware that you were not selected for the Consumer Safety Officer (CSO) position at GS-9, in Irvine or Woodland Hills, CA posted under job Vacancy Announcement Number 10695966.*

**Complainant's Testimony**

Complainant stated that on January 16, 2020, he applied for the CSO position under Vacancy Announcement Number 10695966 in Irvine, CA.  He noted he applied online through the USAJOBS.gov website.  (Exhibit F-1)

Complainant conveyed that he received an email message from OTS on February 24, 2020, stating he was ineligible for the position of CSO.  He maintained he later learned he was considered for the position; however, the location identified for consideration was Cincinnati, Ohio, not Irvine, CA.  (Exhibits F-29 and 30)

Francis Yomi                                                    HHS-FDAORAPA-070-20

*[Investigator's Note:  Complainant was considered for a CSO position in Woodland Hills, CA, under Vacancy Announcement Number 10683417, opening and closing dates December 27, 2019, to January 3, 2020.]*

**Management Testimony**

CAPT Jacobitz stated that the Irvine Certificate of Eligibles for Vacancy Announcement 10695966 did not include the Complainant, and there were no selections made from the Certificate.  However, she indicated that one individual on the Certificate was interviewed by DPQO Division IV but could not pass his reference check and was not selected.

According to CAPT Jacobitz, Complainant applied for a CSO position in Los Angeles, CA, specifically, Woodland Hills, under Vacancy Announcement Number 10683417, and he was listed on the Certificate of Eligibles.  (Exhibit F-14)  She stated that her office interviewed Complainant because he showed an interest in pharmaceutical drugs.  (Exhibit F-3)

**Witness Testimony**

Mr. Araneta stated Complainant was interviewed for CSO, GS-0696-09, in Woodland Hills, CA, under Vacancy Announcement Number 10683417.  He recounted he was unaware of Complainant being considered for a CSO position in Irvine, CA.  (Exhibit F-5)

Gerard De Leon stated he was unaware Complainant had applied for a CSO position under Vacancy Announcement number 10695966.  He stated Complainant was being considered and interviewed for a position in Woodland Hills, CA, under Vacancy Announcement 10683417. (Exhibit F-6)

**Rebuttal Statement**

Complainant responded to management's testimony.  He stated, according to CAPT Jacobitz, no selections were made for Irvine, CA, from the Certificate of Eligibles, but that was contrary to what the Freedom of Information  Act (FOIA) told him.  He stated he was informed that six (6) candidates were selected for this CSO position under Vacancy number 10695966 in Irvine, CA. to include: Kaitlyn T. Dang, Connie N, Janice Loy, Jonathan Dare, Yen-Tso Kuo, and Celta Shierrie Coves.

> 2.  *On February 12, 2020, during your job interview for the CSO position, you allege reprisal/retaliation when you conveyed to the interview panel members that you were a former FDA employee in Lenexa, KS, and you were discriminated against and harassed by management (Your former Supervisor) in Lenexa, KA.  You believe that the interview panel members, selecting official, Program Analyst, and the Human Resources Department in Irvine, CA or Woodland Hills, CA that assisted in the hiring or selection process were complicit in what you deemed a retaliatory process when you were not selected for the CSO position.*

8

Francis Yomi                                                    HHS-FDAORAPA-070-20

**Complainant Testimony**

Complainant stated that on February 10, 2020, he received an email message from Ms. Amaya confirming he was scheduled for a telephonic interview via WebEx for the position of CSO in Woodland Hills, CA, on February 12, 2020.  (Exhibit F-17)

Complainant described his interview with Mr. Araneta and Mr. DeLeon.  He recounted the interview lasted about an hour and included 25 questions related to his resume.  He affirmed that the questions were relevant to the position he was applying for and were meant to evaluate his education and experience levels to determine if he was a good fit for the position.

Complainant contended his interview went very well.  He stated he spoke of his work experience as a CSO for the  FDA in  Lenexa, KS, and believed he had successfully passed the interview.

Complainant stated he was confident he would be selected for the position because of his on-the-job experience as a CSO and his educational background.  He maintained he was the only candidate experienced in pharmaceutical drugs and easily answered all questions.  He acknowledged that other applicants had some knowledge of the position; however, he had actual hands-on experience as a CSO.

According to Complainant, during the interview, he discussed his prior employment with the interview panel members.  He said he spoke about his former supervisor and how she discriminated against him and harassed him to the point that he was forced to resign from his position.  He noted he also told the panelists he was placed on a Performance Improvement Plan (PIP).  (Exhibit F-19 and 20)

Complainant stated he sensed the panel members were not happy that he divulged his former supervisor's harassment and discrimination against him.  He remarked he had to tell them that his resignation was not related to any performance issue.  He contended because he disclosed discrimination and harassment to the panel members; they retaliated against him by not selecting him.

Complainant described he did not know the interview panel members or selecting official at the time of his interview.  He related Mr. Araneta was visibly critical of him during his interview, especially when he mentioned he was discriminated against by his former supervisor.  Complainant maintained he was interrupted several times when he answered questions and could not finish his responses.  He asserted Mr. Araneta yelled at him and spoke to him disrespectfully during the interview.

According to Complainant, the Agency refused to tell him who was selected for the position in question or how many selections were made.  He asserted he requested information regarding the selection from Mr. Araneta, but he refused to provide him any information.  (Exhibit G-8)  He stated he learned through the Freedom of Information Act that six (6) individuals were selected, and most had less or equal educational experience as he.  (Exhibits F-18, 25, 26)

Complainant contended the interview panelists discriminated against him because of his race, national origin, and color and affirmed both panelists were aware of his protected statuses but did not explain how they were aware. He recounted Mr. Araneta knew during the interview that he was African-American and native to Cameroon, Africa. He remarked, "We all know that racism against African-American, Black people exists in the United States." He claimed this was an undisputed fact. He stated Mr. Araneta's behavior towards him was a sign of discrimination against him based on his protected status. (Exhibit F-1)

**Management Testimony**

CAPT Jacobitz reported that during the interview process, panel members evaluated the candidate's knowledge of the FDA and the products they regulate, their oral and written communication skills, and their affinity for the work, along with real-life experiences that could contribute to the work of the office.

She stated that each candidate interviewed was assessed on their interview quality and their responses to questions. According to CAPT Jacobitz, recommendations were based on the resume, the interview outcome, and the reference checks.

CAPT Jacobitz noted Complainant's background appeared to align with her program, so it was decided he would be interviewed. She stated the interview panelists discussed Complainant's interview and determined he had scored so poorly there was no need to conduct a reference check on him.

CAPT Jacobitz stated that in her assessment of the interview notes, it appeared Complainant did not take the opportunity to best address the questions and showcase his abilities, talents, and potential contributions to the position for which he was interviewing. She stated she would have expected him to do very well in his interview because of his previous work experience with the FDA.

According to CAPT Jacobitz, even though Complainant believed he should have been the best-qualified candidate for the job because of his educational experience and former employment, several very qualified individuals applied for the position, including people in professional occupations within the private sector.

She expressed considerable emphasis on the interview process and interviewed many candidates with varied backgrounds to compliment the team. She remarked Complainant was treated the same as every other candidate interviewed, but despite his education and experience, he performed poorly during the interview process and did not take advantage of the opportunity to elaborate on his skills and talents.

CAPT Jacobitz reported she had no visual contact with Complainant and did not know his race, color, or national origin. She recounted that during the Complainant's mediation conducted by telephone; no video communication was available that would have allowed her to identify Complainant's protected statuses. (Exhibit F-3)

Francis Yomi                                                            HHS-FDAORAPA-070-20

<u>LCDR Yambot</u> stated that he was serving as acting DIB at the time of the selection process because CAPT Jacobitz was away on training when selections were submitted.

He described the interview process relating, after interviews, the interview panelists identified the candidates who scored well enough to be reference checked. He related, after reference checks, the team discussed candidates for consideration, and he signed the Certificate of Eligibles, selecting two candidates for the Woodland Hills, CA location. The Witness stated Certificates of Eligibles were submitted to CMD Porter for his signature before the whole package was sent to the OTS. From there, the selectee either accepted or rejected the offer. He stated if a candidate declined the offer, the next in line alternate was selected, and the certification was updated.

LCDR Yambot described the factors considered in assessing candidates were resumes, interviews, and reference checks. He stated the SCSO team evaluated which candidates appeared to be a good fit for the position and determined how well the candidates answered questions and handled the process as a whole.

LCDR Yambot stated candidates selected for the Woodland Hills. CA location was Heidy Cruz Perales and Crystal Monroy. He noted he could not compare the Complainant's qualifications to the selectees' because he did not review Complainant's resume. He conveyed that because the interview panel decided not to move Complainant on to reference checks, the Complainant was not on his radar.

According to LCDR Yambot, he did not participate in Complainant's interview. He stated he had no insight into how well the Complainant performed but related Mr. Araneta and Mr. DeLeon were highly professional and would not have harassed Complainant during his interview.

LCDR Yambot stated he was not aware of Complainant's race, national origin, color, or prior EEO activity and maintained a candidate's protected statuses were not factors in the selection process.

LCDR Yambot stressed Complainant's former employer was not contacted for a reference check because of his interview outcome. (Exhibit F-4)

**Witness Testimony**

<u>Mr. Araneta</u> stated that Complainant's interview was conducted by telephone because he was out of state, and there was no visual communication with Complainant because the camera was not working.

Mr. Araneta explained that all candidates were asked the same questions during the interview process and were allowed one hour to complete their interviews. He related all responses were recorded in real-time, and scoring was done at the time of the interview.

He stated interviews were scheduled after the management team reviewed the applicants' resumes and determined which candidates would be interviewed. He recounted Complainant

11

Francis Yomi                                                    HHS-FDAORAPA-070-20

showed an interest in pharmaceuticals, which was his program, and it was decided that
Complainant would be interviewed.  (Exhibit F-18)

According to Mr. Araneta, candidates were evaluated, and those who did well proceeded to
reference checks following the interviews.  He stated Complainant was not referred for a
reference check because he scored poorly on his interview.  (Exhibit F-19)

Mr. Araneta stated a designee conducted reference checks within Division IV.  He claimed that if
the reference checks were satisfactory, the selecting official would ask the interview supervisors
for recommendations.  He stated the management team met to confirm the finalists and alternates
recommended based on their interview scores and reference checks.

Mr. Araneta stated he received several applications for this particular announcement and
interviewed each applicant on the Certificate.  He related the panel unanimously agreed that
Complainant was not a good fit as a CSO based on his interview.

He stated he received several email messages from Complainant inquiring about the selection.
He asserted he referred Complainant to USAJobs for the status of his application.  Mr. Araneta
expressed he was only responsible for interviewing candidates and had no knowledge of those
candidates selected.  (Exhibit G-8)

Mr. Araneta stated he did not know Complainant and was not aware of this race, national origin,
or color.  He contended those were never factors considered in the interview process.

He stated he was not aware of Complainant's prior EEO complaint, and Complainant never
stated during the interview that he had filed an EEO complaint against the Agency.  He
communicated Complainant discussed that he was placed on a PIP and forced to resign from his
CSO position.  He relayed the panelists did not solicit this information from Complainant and did
not question Complainant regarding his former employer even though CP "kept bringing it up."

According to Mr. Araneta, Complainant had an excellent educational background; however, the
panelists looked at additional qualities, such as communicating effectively, focusing, and staying
on task.  He stated Complainant did not meet the above qualities he was looking for in a CSO.
He remarked Complainant did poorly during the interview because he did not give specific and
pertinent examples related to the questions.

He stated Complainant never really highlighted anything about himself, and there were several
times when he had to redirect Complainant back on topic because he wanted to dwell on his past
experiences with the FDA.  He stated the experiences he did share were not relevant to the
questions.

He remarked Complainant had a hard time concentrating and could not answer seven (7) out of
15 questions.  He stated he often had to re-direct him or ask follow up questions so Complainant
could re-focus.

Mr. Araneta recounted Heidi Cruz Perales and Crystal Monroy were selected for the CSO position because they scored high on the interview questions.  He stated Ms. Perales gave excellent examples and was on-point with her answers.  After reviewing her resume, he remarked that she possessed the necessary experience and education for the position.

Mr. Araneta stated that although Ms. Monroy did not have FDA, CSO experience, she had an audit background and was familiar with how regulations worked.  When asked a question, he maintained Ms. Monroy gave good responses with examples, making her a good fit for the CSO position.  (Exhibit F-5)

According to Mr. DeLeon, before the interview progressed, Complainant was made aware he was being considered for a CSO position in Woodland Hills, CA.  He stated Complainant acknowledged he understood and had no objections, so the panelists moved forward with the interview.

Mr. DeLeon related Complainant was interviewed on February 12, 2020, by him and Mr. Araneta.  He stated Complainant was scheduled for a WebEx interview because he was not a resident; however, Complainant was late for his interview, and his camera was inoperable, so they could not see him.

According to Mr. DeLeon,  Complainant scored a 36 out of 75 on his interview, which made him ineligible for further consideration, and Complainant's qualifications were never discussed with the selecting official.

Mr. DeLeon described Complainant began his interview by talking about himself.  He said Complainant discussed his prior employment with the FDA and shared he did not get a good evaluation at mid-year from his supervisor and was placed on a PIP.  He asserted Complainant felt his work environment had become hostile, and his supervisor forced him to resign from his position.  Mr. DeLeon reported that although Complainant discussed his prior work environment, CP never discussed filing an EEO complaint against the Agency.  He related Complainant's accusation that he was retaliated against was false.

Mr. DeLeon stated that the only thing Complainant did well during the interview was show up.  He stated Complainant had a difficult time staying on point for each question and focused more on how badly he was treated during his prior employment with the FDA

He stated Complainant's answers did not demonstrate a willingness to be trained.  He implied Complainant had difficulty articulating what he could do well on the job, and he was unwilling to discuss his weaknesses.  He described Complainant had difficulty providing details to specific questions and appeared stuck on talking about his former job.  He stated Complainant was not focused and did not show he had the abilities required of the position.

Mr. DeLeon stated he did not recall the selectees for the position in question but looked at each candidate's resume, work experience, and education.  He remarked he was looking for candidates with a professional demeanor that stood out and who demonstrated their ability to respond well

13

Francis Yomi                                                    HHS-FDAORAPA-070-20

to questions.  He related other factors considered; willingness to relocate, willingness to travel, and a general understanding of what the Agency did.

Mr. DeLeon disputed Complainant's allegation that the process was discriminatory, conveying all candidates were asked the same questions, treated similarly during the interview process, and allotted the same amount of time.  He asserted if Complainant felt panelists were disrespectful, that was his perception; however, he had been trained to focus on the interview questions, remain professional, and use tact and diplomacy when communicating with all candidates.  He contended Complainant was not harassed, and harassment was not tolerated in the Agency.

Mr. DeLeon stated he interviewed several applicants back-to-back during this selection process and would have difficulty remembering the race, color, and national origin of each applicant.  He added race, national origin, and color were not relevant to the position and stated no candidate was questioned about their protected statuses.  He related he did not remember ever seeing Complainant and would not know him if they passed on the street.  (Exhibit F-6)

<u>Ms. Amaya</u> stated that the only role she played in the interview process was to set up interviews for the locations assigned.  She related Complainant was considered for a CSO, GS-0696-09 position under Vacancy Announcement number 10681417 in Los Angeles, CA, at the Woodland Hills, CA post.  (Exhibit F-17)

Ms. Amaya stated Complainant contacted her via email requesting a copy of the Vacancy Announcement for the position in question.  She related she inadvertently sent him the wrong Vacancy Announcement.  Ms. Amaya maintained she did not realize Complainant was on the round 1B announcement until the EEO Investigator contacted her.

She reported Complainant was pressing her to tell him if he was selected for the CSO position.  She stated she had no information on selections and told Complainant that was the role of OTS.  (Exhibit G-9)

She stated the Vacancy Announcement she sent to Complainant did not list all the locations, so he requested she send him the entire list.  She stated since the announcement uploaded to the SharePoint site did not show all locations, she had to request that information from the individuals who assign work to the Schedulers.  She said she received the locations via email in Excel format and sent it to Complainant.

According to Ms. Amaya, she did not recall ever communicating with Complainant by phone, only email, and tried to help.  She stated she was not disrespectful, nor did she try to confuse or manipulate Complainant.

Ms. Amaya stated she did not know Complainant's race, national origin, or color and was not involved in the selection process.  She upheld she did not know of Complainant filing an EEO complaint.  (Exhibit F-7)

<u>Dina West</u> stated no one had contacted her about Complainant other than those investigating an EEO complaint naming her as the responsible management official.  (Exhibit F-8)

Francis Yomi                                                    HHS-FDAORAPA-070-20

**Rebuttal Statement**

Complainant submitted a rebuttal affidavit in response to CAPT Jacobitz's testimony. (Exhibit F-2)

Complainant stated he did not recall selecting Los Angeles, CA, as an area of consideration for the CSO position. He related; Ms. Amaya, Mr. Araneta, and Mr. DeLeon all worked in Irvine, CA. He maintained he was interviewed for a position in Woodland Hills, CA, but Woodland Hills was not among the cities listed under Vacancy Number 10695966. (Exhibit F-16)

He contended the point was not the announcement's location but that the Agency graded his interview after his non-selection. He stated Mr. DeLeon graded his interview on February 24, 2020, and he was notified of his non-selection that same day. He stated Mr. Araneta signed his interview notes on May 21, 2020, after his non-selection, and after the EEO Counselor questioned the Agency about his non-selection. (Exhibit F-19-20)

According to Complainant, CAPT Jacobitz stated he was not listed on the Irvine, CA Certificate of Eligibles; yet, he denied being on the Certificate for Woodland Hills since Woodland Hills was not one the 10 cities listed under Vacancy Announcement Number 10695966. (Exhibit F-27)

Complainant contended the panelist knew he was African-American, black, and originally from Africa because he shared that information with the selecting official during his mediation.

Complainant stated the Agency did not select him despite the announcement location and then claimed it was because of his poor interview. He stated it was obvious Mr. Araneta discriminated against him because he graded Complainant's interview after selections were made, and he filed his EEO complaint. He stated the Agency dated the interview notes February 12, 2020, to make it look as though that was the date he was scored by Mr. Araneta, but the document was not digitally signed until May 21, 2020. He maintained this proved fraud and cheating by the Agency because he reported discrimination and harassment by his former supervisor during his interview. (Exhibit F-19)

He stated he conveyed to the panelists that his manager in Kansas discriminated against him, and he was forced to resign. Complainant maintained his interview was excellent, and he should have been the most qualified candidate with more than eight (8) months of experience as a CSO.

Complainant stated the selecting official mentioned reference checks. He affirmed the Agency should have completed reference checks on him and expressed they may have violated the selection process by not doing so. (Exhibit F-2)

> 3. *On June 17, 2020, you allege that you were retaliated against when you were not*
> *selected for the CSO position, Vacancy Announcement Number 10695966, at GS-*

Francis Yomi                                                    HHS-FDAORAPA-070-20

> *9, in Cincinnati, OH after you were referred to the selecting official on March 27,*
> *2020; due to the agency's knowledge of your prior EEO activity that was taken*
> *against the FDA Management and Human Resources located in Irvine, CA or*
> *Woodland Hills, CA.*

## Complainant Testimony

Complainant stated he applied for a CSO, GS-09 in Cincinnati, OH, through www.USAjobs.gov
on February 17, 2020.  (Exhibit F-28)

He stated he received an email message from USAstaffing on February 24, 2020, informing him
that he was ineligible for OH's CSO position.  He noted that because he was considered eligible
for the CSO position in CA, he contacted OTS to inquire about his determination of ineligibility.
(Exhibit F-29)

Complainant stated Mr. Robichaud from OTS sent him an email message on March 27, 2020,
saying his application was reevaluated and he was found eligible for the position.  He reported
Mr. Robichaud advised him an amended Certificate of Eligibles was sent to OH.  He stated he
asked Mr. Robichaud why he was deemed ineligible, but he did not answer his question.
(Exhibit F-30)

According to Complainant, he was never interviewed for the CSO position in Cincinnati, OH.
He stated he could only assume that one of the mediation participants or someone from
Woodland Hills, CA, contacted management in OH and advised them that he had filed an EEO
complaint against management in CA and not to hire him.

According to Complainant, he did not hear from anyone in FDA about the position he was being
considered for until March 27, 2020, and again on June 16, 2020.  He stated the Agency had to
prove he did not deserve to be interviewed for Cincinnati and ultimately not-selected; otherwise,
it was clear that he was discriminated against. (Exhibit F-36)

Complainant stated if he would have been treated fairly, he would have been selected for the
position in Cincinnati because of his educational and on-the-job experience, annotated in his
resume.  He stated he had a Master's degree in Biotechnology, which already qualified him for
the job and a Graduate Certificate in Biochemical Regulatory Engineering; A Graduate
Certificate in Engineering Management; and another one in Biotechnology Management.  He
reported he also had some experience in the Pharmaceutical field, including working at a
Pharmacy.

## Management Testimony

Mr. Czabaniuk stated his office did advertise to fill CSO positions in Cincinnati, OH, under
Vacancy Announcement Number 10695966.  He maintained Complainant was not listed on the
Certificate of Eligibles given to him or his team.  He stated as the selecting official, he signed the
Certificate on April 22, 2020, and returned the documents to OTS to confirm the selectees had
accepted an offer of employment.  (Exhibit F-31)

16

Francis Yomi                                                        HHS-FDAORAPA-070-20

Mr. Czabaniuk stated he was not aware Complainant had been determined ineligible for the position in question and was later deemed eligible. He stated he had no idea when an amended Certificate appeared.

According to Mr. Czabaniuk, the selection team was given access to candidates' resumes through SharePoint. He said he did not know if the supervisors did not see Complainant's resume or were even aware of any amendment. He emphasized that the interview panel's Certificate did not include Complainant's name and assumed the Cincinnati Office never received an amended Certificate.

Mr. Czabaniuk stated the interview panelists convened and discussed the results of the interviews. He recounted candidates considered were referenced checked, and if accepted, their names were forwarded to the DIB then forwarded to him.

Mr. Czabaniuk stated he was not aware of Complainant's protected statuses because he did not know him. He related EEO protected statuses were not relevant to the selection process, and no data on race, national origin, or color of candidates interviewed was maintained.

Mr. Czabaniuk advised that Lisa Renee Hilliard and Wen Ning Chan were selected for the position of CSO in Cincinnati, OH. He stated that both candidates possessed outstanding skills and did very well during their interviews. (Exhibit F-32 and 33) He reported Ms. Hilliard was African-American, and Ms. Chan was Asian and Chinese. (Exhibit F-9)

**Witness Testimony**

<u>Mr. Eastham</u> stated he did not recall seeing Complainant's name on any Certificate for CSO in Cincinnati, OH. He maintained if Complainant were listed on the Certificate, he would have been interviewed for the position.

Mr. Eastham stated he was involved in this selection process as an interview panel member and the Lead team member coordinating paperwork and sending documents to the selecting official. He identified the selecting official as Mr. Czabanuik. (Exhibit F-10)

He remarked he had received a list of names and resumes that were reviewed by the selection team. He stated supervisors went through a list of resumes and selected candidates for interviews. He noted the panelists convened to discuss the candidate's qualifications and responses to interview questions after each interview. He stated if an applicant did well, a reference check was conducted.

Mr. Eastham related each candidate interviewed was asked the same questions. He stated at the end of each interview, the applicant was given a score for their responses, and their scores reflected their level of education, knowledge of core sciences, and ability to communicate and write investigative reports.

Francis Yomi                                                        HHS-FDAORAPA-070-20

He noted once the team decided who would be a good fit for the position, their names were sent to the DIB for review, then forwarded to the selecting official for signature and forwarded to OTS to offer employment to the candidates.

Mr. Eastham stated Complainant was never interviewed or reference-checked because his name was not listed on the Certificate he and his team were given.  He stated, in the selection process, EEO protected statuses were never discussed during the interview and had no bearing on whether the prospective candidate was eligible for the position.  He added he was unaware of Complainant's Race, National Origin, color, or any prior EEO activity because he knew nothing about Complainant until being contacted by an EEO Investigator.

Mr. Eastham stated that two selections were made from the Certificate of Eligibles, including Lisa Renee Hilliard and Wen Ning Chan (Sally).  He recounted he was the panelist that interviewed Wen Ning Chan.  He commented she was a very strong candidate because of her background in the pharmaceutical industry and had a Ph.D. in chemical engineering and a Master's in Business Administration.  He communicated Ms. Chan did very well during her interview.  (Exhibit F-32)

He stated Emily Kahn interviewed Ms. Hilliard and highly recommended her for selection.  He stated so far, Ms. Hilliard had shown herself to be a valued employee.  (Exhibit F-33)

Mr. Eastham stated Complainant was not retaliated against by him, nor was he contacted by Ms. King or management from CA regarding Complainant's prior EEO activity.  (Exhibit F-10)

Mr. Robichaud stated he did not know Complainant and could not recall speaking to him on the phone.  He affirmed his conversations with Complainant were generated through email correspondence relating to the status of his application.

Mr. Robichaud stated Complainant applied for CSO positions in Los Angeles, CA, and Cincinnati, OH, under a DHA.  He explained that Direct Hire provides agencies with authority to refer candidates for positions when there is a severe shortage of candidates or a critical hiring need to fill positions that traditionally are difficult to fill.  He related there was no ranking of applicants; however, they had to meet the minimum requirements in education and specialized experience, with one year of experience at the next lower grade.  He stated anyone could apply as long as they met requirements and were US citizens.  (Exhibit G-13)

According to Mr. Robichaud, because this position was advertised under a DHA, HR Specialists reviewed resumes, and those applicants who met the minimum education and specialized experience qualifications were forwarded to the respective locations for consideration.  He stated he was not aware of the person who reviewed Complainant's resume and found him ineligible.

Mr. Robichaud stated when Complainant's resume was first reviewed, he was deemed ineligible for the position because he did not show he possessed either a degree in the required field of study or a degree that included the required curriculum as specified in the announcement.

18

Francis Yomi                                                                    HHS-FDAORAPA-070-20

He contended Complainant contacted the intake box at quickquestions@fda.gov, questioning his ineligibility for CSO, GS-0696-09 under Vacancy Announcement Number 10595966 in Cincinnati, Ohio.  Mr. Robichaud stated he reviewed Complainant's application and deemed him eligible for the position, so he contacted Complainant by email message advising him that his resume was forwarded to OH for consideration.  (Exhibit F-28, 29, 30)

As Mr. Robichaud recounted, he sent an email message to all Schedulers on March 27, 2020, notifying them of applicants who had been added to the Certificate of Eligibles under Vacancy Announcement Number 10695966.  He noted several applicants were added for consideration, and the Complainant's name was listed for consideration in Cincinnati, OH.  He stated Schedulers were instructed to notify their interview panelists after uploading the resumes to the Sharepoint site.  He was not aware of the Scheduler's name in OH or if the information was passed on to the panel members.  (Exhibit F-30)

According to Mr. Robichaud, he was not aware of Complainant's race, national origin, or color because his office was not responsible for capturing that kind of data in their system.  He noted he would not know Complainant's protected status since he never saw or spoke to him.

Mr. Robichaud stated Complainant implying that he was harassed was not true.  He stated he did not harass Complainant, and all communication with Complainant was through email messaging.  He also confirmed he was not aware of Complainant's EEO activity until he was asked to provide documents related to Complainant's claims and later asked to provide an affidavit in the instant complaint.  (Exhibit F-11)

Ms. Aden stated Complainant made the Certificate of Eligibles on March 27, 2020, and his resume was uploaded to the designated SharePoint site for hiring managers to review. She mentioned managers could interview any qualified candidates they wanted, and it was not mandated that every candidate be given an interview.

According to Ms. Aden, the original Certificate was received on February 21, 2020; and on March 27, 2020, OTS sent a separate email stating, "The following applicants have been added to Direct Hire certificates, 10695966 (Round 2B), and are eligible for consideration.  She stated Complainant's name was listed on the email.  (Exhibit F-30)

She recounted notifying hiring managers on February 25, 2020, advising them to review resumes and provide her with the names of candidates they wished to interview. She described, upon receiving names, she began scheduling interviews for March 4, 2020, and March 5, 2020.  She stated she received selections from hiring managers on March 6, 2020; therefore, the selectees' names were identified before receiving the email from OTS on March 27, 2020.  (Exhibit F-12)

**Rebuttal Statement**

In response to management's testimony, Complainant maintained that the Agency did not give any legitimate reason for his non-selection.

Francis Yomi                                                    HHS-FDAORAPA-070-20

Complainant maintained whatever the Agency came up with; the reality was that the selecting official did not see his name on the Certificate of Eligibles. He stated this was enough to prove he should prevail in his EEO complaint since the Agency could not provide a legitimate reason for his non-selection. (Exhibit F-2, supplement)

4. *On October 18, 2020, you learned that the FDA in California stated that you did not apply for the CSO position, Vacancy Announcement Number 10695966 in Irvine, CA*

**Complainant Testimony**

Complainant stated his claim was framed incorrectly and should have stated that:

"*On October 18, 2020, I learned that the FDA in California said I did not apply for the CSO job Vacancy ID 10695966 in Irvine, CA. I allege that I was subjected to discrimination on the bases of Race, Color, or National Origin by the FDA in Cincinnati, OH, when on June 17, 2020, I was not selected for the CSO Job Announcement Vacancy ID 10695966, at GS-9, in Cincinnati, OH, after my "referral to the selecting official" on 03/27/2020.*"

Complainant acknowledged there was no discrimination for learning someone did not apply for a job. However, he was alleging he was discriminated against when he was not selected for CSO in Cincinnati, OH. (Exhibit F-1, supplement)

**Management Testimony**

Mr. Czabaniuk stated Complainant was not reprised against by him or his team because they were never aware Complainant applied for a CSO position in CA. He reported he was not contacted by anyone from CA or by Ms. King regarding Complainant's EEO activity.

**Witness Testimony**

Mr. Robichaud stated he did recall the EEO Investigator contacting him in October regarding Complainant's claim that he applied for a CSO position in Irvine, CA under Vacancy Announcement number 10695966. He affirmed to the EEO Investigator that Complainant applied for a CSO position in Cincinnati, OH, not Irvine, CA. (Exhibit F-11)

If the Agency has produced legitimate, non-discriminatory reasons for its actions affecting Complainant, the burden then shifts back to Complainant to prove that the legitimate, non-discriminatory reasons articulated by the Agency are a pretext for prohibited discrimination. Complainant submitted a rebuttal Affidavit in response to management's testimony. (Exhibit 2)

**Rebuttal Statement**

Complainant expressed he should not be the one who pays the price for the Agency's mistakes. He contended he should be hired and that the Agency's mistake or discrimination was not something to which he should be the loser. He asserted he fully deserved to be the winner and be hired. (Exhibit F-2, supplement)

20

Francis Yomi                                                              HHS-FDAORAPA-070-20

## V.     <u>SURVEY OF THE GENERAL ENVIRONMENT</u>

The Agency provided an Organization Chart for the Office of Pharmaceutical Quality
Operations, Division IV.  (Exhibit G-1)

The workforce profile for OPQO, Division IV, shows 44 employees as of February 2020.  Of
those, 11 are White, four (4) are Black, 19 are Asian, and 10 were listed as "invalid."  There are
two (2) annotations of EEO activity.  (Exhibit G-2)

According to the Agency, the Selectees for the position of CSO in Woodland Hills, CA identify
themselves as Hispanic and Caucasian.

The Agency provided an Organization Chart for the OPQO, Division III.  (Exhibit G-4)

No workforce profile by RNO was provided for the OPQO, Division III.  (Exhibit G-5)

Data provided by the OPQO, Division III, shows eight (8) SCSO's under Mr. Czabanuik.  Of
those, seven (7) are White, and one (1) is Black.  (Exhibit G-6)


___*Salli Phillips*_____                  ___01/14/2021_____
EEO Investigator                                Date

Francis Yomi                                                    HHS-FDAORAPA-070-20

## INDEX

Exhibit A:      Formal Complaint Documents

        A-1:    Formal Complaint of Discrimination, dated July 30, 2020.

Exhibit B:      EEO Counseling Documents

        B-1:    EEO Counselor's Report, dated August 11, 2020.

        B-2:    Notice of Final Interview and Right to File a Formal Discrimination Complaint, dated July 10, 2020.

Exhibit C:      Administrative Documents

        C-1:    Letter of Acknowledgment, dated July 30, 2020.

        C-2:    Letter of Acceptance, dated August 30, 2020.

        C-3:    Revised Letter of Acceptance, dated October 2, 2020.

        C-4:    Amended Letter of Acceptance, dated November 23, 2020

        C-5:    Letter to Complainant from the Agency denying a request for amendment, dated December 14, 2020.

Exhibit D:      Documentation of Attempts at Resolution

        D-1:  Note to File, Attempt at Mediation.

Exhibit E:      Appellate Activity

Exhibit F:      Affidavits and Other Evidence

        F-1:    Affidavit of Complainant, dated October 19, 2020, and Supplemental Affidavit, dated December 28, 2020.

        F-2:    Rebuttal Affidavit of Complainant, dated November 8, 2020, and Supplemental Affidavit dated December 28, 2020.

                *[Investigator's Note:  Complainant references his mediation in his affidavits.  He was counseled by HHS OEEO of the confidentiality of mediation conversation but Complainant wanted information included to show a nexus between the mediation and his allegation of reprisal.]*

22

Francis Yomi                                                      HHS-FDAORAPA-070-20

F-3:    Affidavit of Management Official, CAPT Katherine Jacobitz, DIB, dated October 28, 2020, with attachment (selections for the past two years).

F-4:    Affidavit of Management Official, Marcus Yambot, Deputy, dated November 2, 2020.

F-5:    Affidavit of Witness, Michael Araneta, Interview Panelist for Vacancy Announcement FDA-ORA-20-DH-10683417-DY in Woodland Hills, CA, dated November 2, 2020.

F-6:    Affidavit of Witness, Gerard De Leon, Interview Panelist for Vacancy Announcement FDA-ORA-20-DH-10683417-DY in Woodland Hills, CA, dated October 20, 2020.

F-7:    Affidavit of Witness, Maribel Amaya, Program Analyst, dated October 26, 2020.

F-8:    Affidavit of Witness, Dina West, Supervisory CSO, and Complainant's former supervisor, dated October 21, 2020.

F-9:    Affidavit of Management Official, Art Czabanuik, Selecting Official for Vacancy Announcement Number FDA-ORA-20-DH-10695966-JM, Cincinnati, OH, dated January 5, 2021.

F-10:   Affidavit of Witness, Steven Eastham, Interview Panelist, for Vacancy Announcement Number FDA-ORA-20-DH-10695966-J in Cincinnati, OH dated January 4, 2021.

F-11:   Affidavit of Witness, Christopher Robichaud, Supervisory Human Resources Specialist, dated December 29, 2020.

F-12:   Affidavit of Witness, Susan Aden, Program Analyst, Scheduler, dated January 5, 2021.

F-13:   Position Description for Consumer Safety Officer, GS-0696-09.

F-14:   Vacancy Announcement number FDA-ORA-20-DH-10683417-DY for Woodland Hills, CA, Consumer Safety Officer, Direct Hire, Open Period December 27, 2019, to January 3, 2020.

F-15:   Certificate of Eligibles, Location Los Angeles, CA, dated January 24, 2020, showing Complainant's non-selection.

F-16:   Notice of Results and Referral Vacancy Announcement 10683417.  Los Angeles, CA, dated June 15, 2020.

23

Francis Yomi                                                              HHS-FDAORAPA-070-20

F-17:   Email correspondence regarding Complainant's interview scheduled for
        February 12. 2020 at 10:00 am via WebEx for CSO position in Woodland
        Hills, CA.

F-18:   Complainant's Resume.

F-19:   Panelist Michael Araneta's Interview questions and notes, with
        Complainant responses dated February 20, 2020, and digitally signed
        October, 2020, with attachment from Complainant showing original date
        of signature as May 21, 2020.

F-20:   Panelist Gerard DeLeon's Interview questions and notes with
        Complainant's responses dated February 24, 2020.

F-21:   Panelist Michael Araneta's Interview questions and notes, with selectee
        #1, Heidi Perales's responses dated February 20, 2020.

F-22:   Panelist Gerard DeLeon's Interview questions and notes with selectee #1,
        Heidi Perales's responses, dated February 24, 2020.

F-23:   Panelist Michael Araneta's Interview questions and notes, with selectee
        #2, Crystal Monroy's responses, dated October 28, 2020.

F-24:   Panelist Gerard DeLeon's Interview questions and notes with selectee #2,
        Crystal Monroy's responses, dated February 24, 2020.

F-25:   Selectee #1, Heidi Perales's Certificate of Eligibles showing her selection
        as CSO, GS-09, with SF-50, Resume, and Reference Check.

F-26:   Selectee #2, Crystal Monroy's Certificate of Eligibles showing her
        selection as CSO, GS-09, with SF-50, Resume, and Reference Check.

F-27:   Complainant's Notification of Disposition, Application # AW1L1-W6EK
        received December 30, 2019, for CSO position in Los Angeles, CA- non-
        selection.

F-28:   Vacancy Announcement Number FDA-ORA-20-DH-10695966-JM,
        Location Cincinnati, OH, for Consumer Safety Officer, Direct Hire, Open
        Period January 13, 2020, to January 17, 2020.

F-29:   Notification of Results and Referral, Cincinnati, OH, showing
        Complainant ineligible for the CSO position, dated February 24, 2020.

F-30:   Email message from Christopher Robichaud, dated March 27, 2020, to
        Schedulers including Susan Aden, Subject: Additional Applicants for
        Consideration, Direct Hire 2B VIN10695966.

24

Francis Yomi                                                                HHS-FDAORAPA-070-20

F-31:   Signed Certificate of Eligibles, Location:  Cincinnati, OH, CA, dated January 22, 2020, without Complainant's name listed and Unsigned Certificate of Eligibles showing Complainant's non-selection.

F-32:   Selectee #1, Wen Ning Chan Certificate of Eligibles showing her selection as CSO, GS-09, with SF-50, Resume, and Reference Check.

F-33:   Selectee #2, Lisa Hilliard Certificate of Eligibles showing her selection as CSO, GS-09, with SF-50, Resume, and Reference Check.

F-34:   Interview questions and notes for Selectee #1 Wen Ning Chan.

F-35:   Interview questions and notes for Selectee #2 Lisa Hilliard.

F-36:   Complainant's Notification of Disposition, Application # AOIHW-YDYG, received June 17, 2020, for CSO position in Cincinnati, OH, non-selection.

Exhibit G:      Statistical and Miscellaneous Information

G-1:    Organizational Chart for Office of Regulatory Affairs, Division of Pharmaceutical Quality Operations, IV as of January 2020.

G-2:    Workforce Profile, for ORA, OPQO IV, annotated by name, title, grade, race, national origin, and prior EEO activity, as of January 2020.

G-3:    Listing of Supervisory CSO's under CAPT Jacobitz by RNO.

G-4:    Organization Chart for Office of Regulatory Affairs, Division of OPQO, III, Cincinnati District Office.

G-5:    Workforce Profile of Cincinnati District Office, annotated by name, title, grade, race, national origin, and prior EEO activity as of February 2020.

G-6:    Listing of Supervisory CSO's under Mr. Czabanuik's chain of command by race and national origin as of February 22, 2020.

G-7:    Complainant's Prior EEO Activity, Kansas City, MO.

G-8:    Miscellaneous Email messages from Complainant to Mr. Araneta dated April 9, 2020.

G-9:    Miscellaneous Email messages from Complainant to Ms. Amaya, dated April 9, 2020.

Francis Yomi                                                                    HHS-FDAORAPA-070-20

G-10:   FDA Bargaining Unit Agreement, Article 36 Merit Promotion, undated.

G-11:   Guide to Conducting a Fair EEO Compliant Selection Process, undated.

G-12:   Background Information for CSO position, undated.

G-13:   Interview Guidelines for Direct Hire Appointments, undated.

G-14:   Role and Responsibility for Managers in Direct Hire Announcements, undated.

G-15:   EEO Policy Statement, Article 48 of the Collective Bargaining Agreement (CBA), undated.

G-16:   Document Requests, dated September 27, 2020, and December 7, 2020.

G-17:   Investigator's Letters of Authority dated March 18, 2020.

26



**FDA U.S. FOOD & DRUG**
ADMINISTRATION

### U.S. Food and Drug Administration Office
### of Equal Employment Opportunity
### (OEEO)

## INDIVIDUAL FORMAL COMPLAINT OF EMPLOYMENT DISCRIMINATION
### Agency Case No.: HHS-FDAORAPA-070-20

Complete this form if you believe you have been discriminated against during your employment on the basis of Race, Color, National Origin, Religion, Sex, Age, Physical or Mental Disability, Sexual Orientation, Retaliation or Genetic Information (GINA).

Note: Pre-complaint counseling is a requirement for all Federal employees and applicants for employment before filing a formal complaint of discrimination. No formal complaint can be accepted for further processing without counseling. If you have not consulted with an Office of Equal Employment Opportunity (OEEO) Counselor or staff member, please contact the OEEO on (301) 796-9400.

1. _Francis Wonkap YOMI_
   Complainant's full name

6. _N/A at this time_
   Complainant's Representative
   (If represented)

2. _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_
   Social Security Number

7. _N/A_
   Representative's Address

3. _1850 Murdock Court_
   Home address (no P.O. box)

_N/A_
City        State        Zip Code

_Frederick MD    21702_
City        State        Zip Code

8. _N/A_
   Representative's Phone Number

_Mailing address: Francis YOMI, P.O.Box 3291, Frederick MD 21705. Please mail everything to this P.O. Box._

4. Complainant's Home Phone: _301-473-2019_

5. Complainant's Business Phone: _301-473-2019_

9. List your Job Title, Pay Plan, Series and Grade: _I was a FDA job applicant._

10. Employing Organization where you believe discrimination/retaliation against you occurred:
_FDA, Office of Regulatory Affairs (ORA) in Irvine, California_

11. Organization's mailing address:
_I don't know._

12. Date of Initial Contact with OEEO:
_April 09th, 2020_

13. Date you received the Notice of Final Interview/Notice of Right to File a Discrimination Complaint:
_July 10th, 2020_

Updated June 2013

Exhibit A-1

 **U.S. FOOD & DRUG**
ADMINISTRATION

HHS-FDAORAPA-070-20

### Instructions for Items 14 – 19

**Note:** Please read these instructions carefully. You can obtain assistance from your EEO Counselor in filling out this form. Your EEO Counselor can also answer any questions you may have about this form. In **item 16,** you should specify the basis of your complaint by identifying your race, color, national origin, religion, sex, sexual orientation, age (date of birth), and/or disability (physical and/or mental). Use one additional piece of paper, if necessary. If you list **"retaliation/reprisal"**, please state the nature of the prior EEO activity in which you were engaged, i.e., did you file a prior EEO complaint?

It is very important that you be precise as to the dates of all actions or events you are protesting. In addition, the claims listed in **item 17**, must be limited to those claims discussed with an EEO Counselor (discussed within 45 days of occurrence of the event, or within 45 days of the effective date, if a personnel action) or **like or related claims**. If any of the claims listed in **item 17** were not discussed with an EEO Counselor, contact the Office of Equal Employment Opportunity, Compliance Staff. The requirement that you contact an EEO Counselor about **every claim** listed in **item 17** will not be waived under any circumstances. Failure to do so will only delay the processing of your complaint.

You must file this complaint within **15 calendar days** of your receipt of the Notice of Right to File a Discrimination Complaint issued by your EEO Counselor.

### Notice

It is your responsibility to keep the Office of Equal Employment Opportunity (OEEO) informed of your current address. If you move, immediately advise the OEEO of your new address.

### Privacy Act Statement

Collection of the information on this form is authorized and/or required by the regulations of the U.S. Equal Employment Opportunity Commission (EEOC), 29 C.F.R. Section 1614. The information collected will be used by the OEEO to determine whether your complaint is acceptable for investigation and in connection with any subsequent investigation and processing of your complaint. In the course of the investigation, this form may be shown to any individual who may be required by regulations, policies or procedures of the EEOC and/or the OEEO to provide information in connection with this matter, including individuals you may have identified as responsible for the incidents or acts at issue in this complaint.

Collection of you social security number, which is solely for identification purposes only, is authorized under Executive Order 9397.

Updated June 2013

FDA **U.S. FOOD & DRUG** ADMINISTRATION

HHS-FDAORAPA-070-20

14. What is the last or most recent date of an alleged discriminatory/retaliatory incident covered in counseling? _July 10ᵗʰ 2020_

15. Identify the name of the person(s) you believe discriminated against you, including title(s), organization(s), office location(s)/address (es).

Cell: 949-233-5022
Tel: 949-608-4406

1. Mr. Araneta Michael, Supervisor CSO, FDA in Irvine, CA: michael.araneta@fda.hhs.gov

2. Ms. Jacobitz Katherine, Selecting Official FDA in Irvine, CA: katherine.jacobitz@fda.hhs.gov

3. Any other individual involved in non-selection (including Ms. Amaya Maribel; maribel.amaya@fda.hhs.gov
Tel: 949-608-2911
Cell: 949-293-7012

16. Check below the Basis(es) on which you believe you were discriminated against from among the following:

[ ] Age _____Yrs. (Date of Birth: _____)
   **(You must have been at least 40 years old when the matter of concern occurred)**
[✓] Race (Specify your race: African-American)
[✓] Color (Specify your color: Black )
[✓] National Origin (Specify: Cameroon in Africa .
[ ] Religion (Specify: _____)
[ ] Disability ( [ ] Physical [ ] Mental)
[ ] Sex (Specify your sex: _____)
[ ] Sexual Harassment
[ ] Genetic Information (GINA)
[ ] Sexual Orientation
[✓] Retaliation/Reprisal see page 4 of 4
[ ] Genetic Information (GINA)

17. Check below the issues of the formal complaint among the following:

[✓] Appointment/Hire
[ ] Harassment (non-sexual)
[✓] Promotion/Selection
[ ] Termination/Removal/Separation
[ ] Disciplinary Action (Specify)
[ ] Performance Appraisal/Evaluation
[ ] Training
[ ] Assignment of duties
[ ] Duty hours
[ ] Medical Examination

[ ] Reasonable Accommodation
[ ] Awards
[ ] Reassignment denied/directed
[ ] Reinstatement
[ ] Retirement
[ ] Time & Attendance
[ ] Pay including overtime
[ ] Conversion to Full-time
[ ] Examination/Test
[ ] Terms & Conditions of Employment

Updated June 2013



HHS-FDAORAPA-070-20

18. Briefly state your complaint. Identify the specific incidents or events and dates on which they occurred which you believe were discriminatory/retaliatory against you (Do not attach exhibits, or any supplemental information. Any irrelevant information will be returned)

1) I believe I have been discriminated against, based on race, and/or color, and/or national origin by the Agency (the FDA/ORA) in Irvine, California, when on April 9, 2020, I learned that the Agency did not select me for the Consumer Safety Officer (CSO) job Vacancy No. 10695966 in Irvine, CA, but selected other applicants. By the way, on 03/24/2020, I first curiously learned that I was "too eligible" and not referred to the hiring official, whereas I had already done an interview for this specific job and same vacancy number on 02/21/2020.

And/or:

2) I believe I was retaliated against by the Agency when it did not select me for the CSO job mentioned here above on item 1) because:

a) By answering to questions during my interview, I let the Agency (the interviewers) know that I believe I was discharged in 2015 by the FDA in Kansas, because I was discriminated and retaliated against by the FDA management in Kansas when I complained about my Job's Mid-Year-Evaluation. In May 2020, the Agency said it did not select me because of my answers during my interview.

And/or because:

b) The Agency called the FDA in Kansas, which let it know that I filed an EEO complaint of discrimination against it a few years ago (in 2015).

19. The following remedial or corrective action will resolve my complaint:

1. Be finally hired or selected as a CSO,

2. Getting paid all back pay

3. Getting any and all compensatory damages (pecuniary and non-pecuniary damages)

4. The person(s) found responsible of discrimination (including retaliation) must be punished, and accountable, held by the Agency and by the US government.

Complainant Signature: _____    Date: July 30th, 2020

**Submit completed form to FDA/Office of Equal Employment Opportunity, EEO Compliance Staff, White Oak Bldg. 32, Room 2260, 10903 New Hampshire Avenue, Silver Spring, MD 20993-0002. You may fax the form at 301-847-8606.**

Updated June 2013

**FRANCIS YOMI'S CLAIMS OF DISCRIMINATION**

**1)** I believe I have been discriminated against, based on race, and/or color and/or national origin by the Agency (the FDA (ORA) in Irvine, California), when on April 9, 2020, I learned that the Agency did not select me for the Consumer Safety Officer (CSO) job Vacancy No: 10695966 in Irvine, CA, but selected other applicants. By the way, on 2/24/2020, I first curiously learned that I was "Ineligible" and "not referred" to the hiring official/s, whereas I had already done an interview for this specific job and same vacancy number, on 2/12/2020.

And/or:

**2)** I believe I was retaliated against by the Agency when it did not select me for the CSO job mentioned in item 1) because:

**a)** By answering to questions during my interview, I let the Agency (the interviewers) know that I believe I was discharged in 2015 by the FDA in Kansas because I was discriminated and retaliated against by the FDA management in Kansas when I complained about my 2015's Mid-Year-Evaluation.

And/or because:

**b)** The Agency called the FDA in Kansas, which let it know that I filed an EEO complaint of discrimination against it a few years ago (in 2015).

On 05/21/2020, I learned from the EEO Counselor that the Selecting (Mr. Houston) Official told him that I was not selected mainly because of my answers during my interview; and I see that: part of my answers was that I let the Agency know that I was discriminated and retaliated against by the FDA in Kansas, in 2015, which let me believe that the Agency in Irvine, CA, discriminated and/or retaliated against me at its turn because of my communication of discrimination during my interview.



## DESIGNATION OF REPRESENTATIVE

Agency File No.: **HHS-FDAORAPA-070-20**

**Francis Yomi**

Pursuant to Title 29 Code of Federal Regulations (C.F.R.) Section 1614.605(a), at any stage in the processing of a complaint, including the EEO counseling stage under 29 C.F.R. § 1614.105, the complainant shall have the right to be accompanied, represented, and advised by a representative of the complainant's choice. However, in cases where the representation of a complainant would conflict with the official or collateral duties of the representative, the agency may disqualify the representative. See 29 C.F.R. § 1614.605(c).

Those aggrieved persons/complainants who may later be entitled to reasonable attorney fees cannot receive fees for services, prior to the official notice in writing to the Agency that counsel has been retained.

It is the aggrieved person/complainant's duty to immediately inform the Agency if representation is retained. Failure to notify the Agency can effect any entitlement to fees or costs associated with such representation.

Please complete the information below and provide this form to the Office of Equal Employment Opportunity at 10903 New Hampshire Avenue, White Oak Bldg. 32, Silver Spring, MD 20993 or fax at (301) 847-8606.

I (do_____) (do not __✓_____) have a representative at this time.

My representative is:
Name:___N A_____
Address:_____
_____
Phone No.: (_____)_____
Fax: (_____)_____
E-mail:_____

_____ My representative is an attorney. I understand that agencies are not required to pay attorney's fees for services performed during the pre-complaint process, and I understand that all time frames associated with the processing of my complaint will be calculated from my attorney's receipt of correspondence. 29 C.F.R. §§ 1614.501(e)(1)(iv) and 1614.605(d).

_____ My representative is not an attorney. I understand that all time frames associated with the processing of my complaint will be calculated from my receipt of correspondence.

I understand that:
Unless I state otherwise in writing, since I have designated a representative, all official correspondence shall be with the representative with copies to me. Also, although I have designated a representative, I am at all times responsible for proceeding with the complaint. Additionally, if I choose to have representation or make a change in representation, I must immediately notify the Agency. Finally, there is no entitlement to attorney fees or costs for discrimination under the Age Discrimination in Employment Act (ADEA) or the Equal Pay Act (EPA), as amended.

_____        July 30th, 2020_____
Aggrieved Person/Complainant        Date

U.S. Food & Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20903
www.fda.gov

000032

**OEEO** | Office of Equal
Employment Opportunity
Revised 06/2017





U.S. POSTAGE PAID
FCM LETTER
FREDERICK, MD
21701
JUL 30, 20
AMOUNT
**$7.10**
R2304M11065½

CERTIFIED MAIL

7020 0090 0000 6284 9933

LaTaisha McClendon, Acting Director
Office of Equal Employment Opportunity
Food and Drug Administration
0903 New Hampshire Avenue
White Oak - 35 Bldg Room - 1100

Mail Screening Facility

AUG 0 4 2020

Francis Yomi
P.o. box 3292
Fredorick, MD 21705



# REPORT OF COUNSELING

**AGGRIEVED PERSON: Frances Yomi**

**AGENCY CASE FILE NUMBER: HHS-FDAORAPA-070-20**

**EEO COUNSELOR: Daniel Houston**

U.S. Food & Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20903
www.fda.gov

**OEEO** | Office of Equal
Employment Opportunity

000035

Exhibit B-1



Date:           August 11, 2020

To:             Francis Yomi
                P.O. Box 3292
                Frederick, MD 21705

From:           EEO Specialist, Daniel Houston
                Office of Equal Employment Opportunity
                Food and Drug Administration

Subject:        EEO Counselor's Report


Attached is a complete copy of your EEO Counselor's report for the subject case number <u>HHS-FDAORAPA-070-20</u>.

In addition, the last page of the EEO Counselor's report is an aggrieved certification for your signature.  Providing your signature on this page, only acknowledges that you received a copy of the EEO Counselor's report, and that you were advised of your rights and responsibilities in the EEO complaint process.

Please **<u>sign, date, and return the signature page</u>** to the address below:

Food and Drug Administration
Office of Equal Employment Opportunity (OEEO)
10903 New Hampshire Avenue
White Oak 32, Room 2260
Silver Spring, Maryland  20993-0002


<u>Enclosures</u>:
EEO Counselor's Report
Original copy of Counselor/Aggrieved Certification

U.S. Food & Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20903
www.fda.gov

**OEEO** | Office of Equal
000036 Employment Opportunity

**Report of Counseling**
**Agency Case File No.: HHS-FDAORAPA-070-20**

**Part I – Initial Interview**

**A. <u>Background of Aggrieved Person</u>**

Name: Francis Yomi

Job Title/Series/Grade: Applicant

Place of Employment:     N/A

Work Phone Number: N/A                          Cell Phone Number: 301-473-2019

Mailing Address:  P.O. Box 3292
                          Frederick, MD 21705

E-mail Address:    fran6@umbc.edu

---

**B. <u>Chronology of Counseling Activities</u>**

Date of Alleged Discriminatory Event: April 09, 2020

45th day after alleged event: May 24, 2020

Reason for delayed EEO Counselor contact beyond 45 days (if applicable): N/A

Date of Initial Contact: April 17, 2020

Date of Initial Interview: April 29, 2020

Date Aggrieved Person Advised to Participate in ADR: April 29, 2020

Date Aggrieved Person Accepted Participation in ADR: May 03, 2020

Date of Extension of Counseling Period (if applicable): N/A

Date of Final Interview: July 10, 2020

Date Counselor's Report Submitted:  August 11, 2020

2